SOL GOTHARD, Judge.
This lawsuit arises out of a joint venture for the exploration and production of oil and gas in St. John the Baptist Parish. Prior to trial, the parties submitted a comprehensive stipulation of facts, leaving for resolution three legal issues: whether plaintiffs were entitled to attorney fees and interest; whether plaintiffs were entitled to delay damages; and, whether defendants were entitled to a credit against any amount awarded. The trial court ruled in favor of defendants, and plaintiffs appeal. For the following reasons, we affirm the decision of the trial court.
| ¿The following facts were taken from the stipulation of facts entered into by the parties.
1. Louisiana Exploration and Drilling Company operated and drilled the Sa *102 bine Royalty No. 1 Well in 1998. On or about November 6, 1998, Palace Exploration Company became the operator of the well. The parties stipulate that Louisiana Exploration owes $210,000.00 to the plaintiffs for its share of costs attributable to the drilling of the well that were unpaid when Palace became operator. Additional sums were owed by Louisiana Exploration, and all other parties, for the costs of the well that exceeded the original estimated amounts, but these additional costs have been paid by all parties under a workout agreement!.]
2. After Palace Exploration Company became operator on November 6, 1998, it paid Gordon, Arata, McCollam & Du-plantis to negotiate a workout plan to pay outstanding vendors and lienholders ... The fees of the Gordon, Arata firm for these negotiations have been deducted by Palace Exploration (on a proportionate 37% basis) from its deposit into the registry of the court.
3. The plaintiffs own 63% and the defendants own 37% of the mineral leases that comprise the production unit for the Sabine Royalty No. 1 Well.
4. The Operating Agreement dated March 31, 1998, ..., governs the relationship between the plaintiffs and the defendants.
[[Image here]]
There were nineteen stipulations in all.
In its first two allegations of error, the plaintiffs argue that the trial court erred in failing to award interest and attorney fees. The trial court denied these elements of damages based on the language of the contract between the parties. Plaintiffs now argue that the trial court erred by applying the language of the contract to a situation that was not contemplated by the parties or the express provisions of the contract.
The Operating Agreement is a contract and it forms the law between the parties. La. C.C. art.1983; Morris v. Haas, 95-75 (La.App. 5 Cir. 5/30/95), 659 So.2d 804, 810. La. C.C. art.2046 provides that “when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”
Exhibit “C”, entitled “Accounting Procedure Joint Operations,” Paragraph 3, provides as follows:
A. Unless otherwise provided for in the agreement, the Operator may require the Non-Operators to advance their share of estimated cash outlay for the succeeding month’s operation within fifteen (15) days after receipt of the billing or by the first day of the month for which the advance is required, whichever is later. Operator shall adjust each monthly billing to reflect advances received from the Non-Operators.
B. Each Non-Operator shall pay its proportion of all bills within thirty (30) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the prime rate in effect at Metro Bank, Me-tairie, Louisiana on the first day of the month in which delinquency occurs plus 1% or the maximum contract rate permitted by the applicable usury laws in the state in which the Joint Property is located, whichever is the lesser, plus attorneys’ fees, court costs, and other costs in connection with the collection of unpaid amounts.
Pursuant to Stipulation No. 9 of the comprehensive stipulation of facts entered into between the parties, Palace “has never issued a letter, invoice or bill to any of the defendants for any sums sought in this litigation.” The trial court noted that un *103 der the plain language of the Operating Agreement, the contract between the parties, the Non-Operator must receive the bills before the tolling of interest and attorney fees will trigger. Because Palace did not comply with the provisions of the operating agreement, it cannot impose the penalties. We agree with the trial court. The contract clearly states that before attorney fees and costs can be incurred, the Non Operator must be | fibilled. It is also clear that no bills were sent to defendants. Accordingly, we find that the trial court did not err in denying interest and attorney fees.
Plaintiffs also argue that despite the court’s failure to award interest pursuant to the Operating Agreement, it is still entitled to interest from date of judicial demand. La. C.C. art. 2000 reads, “[w]hen the object of the performance is a sum of money, damages for delay and performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of an agreement, at the rate of legal interest as fixed by Article 2924.” In this case, there is an agreement as to judicial interest, and therefore, the provisions of legal interest do not apply.
In its third allegation of error, plaintiffs allege that the trial court erred in failing to award delay damages. Defendants argue that no delay damages are owed because plaintiffs did not suffer damages as a result of the delay. They contend that the price of oil went up during the delay period and therefore the delay actually benefitted plaintiffs. Plaintiffs argue they are entitled to an award of money as compensation for the amount of time between its assumption of control over the well and compromising the claims of the lien holders not paid by defendants; in other words, damages for deferred production. The trial court denied these damages, finding that this type of damages was an element in “numerous maritime cases based on maritime collision (and allision) law, specifically the basic maritime collision doctrine of restitutio in integrum” and that it would not extend this doctrine to a case such as the one at present. We agree with the trial court, and find no error in its ruling.
|7In its final allegation of error, the plaintiffs argue that the trial court erred in awarding a credit to defendants. However, the trial court noted that this credit would not reduce the amount of plaintiffs’ award, and the Stipulation of Facts indicated that plaintiffs will recover no less than $210,000.00. Thus, the issue of any credit awarded by the trial court is moot.
Accordingly, we affirm the decision of the trial court. Costs are assessed against appellants.
AFFIRMED.